IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 19-11079

---

# UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE.,*

## V.

# MICHAEL DASEAN ROBINSON,
*DEFENDANT-APPELLANT.*

---

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

# APPELLANT'S INITIAL BRIEF

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

J. MATTHEW WRIGHT
ASSISTANT FEDERAL PUBLIC DEFENDER
500 South Taylor Street
Suite 110
Amarillo, Texas 79101
(806) 324-2370
Matthew_Wright@fd.org

*Counsel for Mr. Robinson*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

District Court Judges:          Hon. John McBryde

Appellant:                 Michael Dasean Robinson

Defense Counsel:          Federal Public Defenders for the Northern
District of Texas
Jaidee Serrano
J. Matthew Wright

Prosecution:              U.S. Attorneys for the Northern District of
Texas
Erin Nealy Cox
Shawn Smith
Leigha Simonton

*/s/ J. Matthew Wright*
Counsel for Appellant

## Statement Regarding Oral Argument

I request oral argument.

# Table of Contents

Certificate of Interested Persons................................................................. ii

Statement Regarding Oral Argument...................................................... iii

Table of Authorities................................................................................ vi

Jurisdictional Statement ......................................................................... 1

Issue Presented for Review .................................................................... 2

Statement of the Case ............................................................................ 3

Summary of the Argument ..................................................................... 7

Argument ................................................................................................ 8

Standard of Review................................................................................. 9

   I.    In applying the § 3553(a) factors, the district court repeatedly referred to its decision that Mr. Robinson's distribution of heroin led to Reed Bartosh's suicide by firearm. ......................................... 9

   II.   Bartosh's suicide came months after Flood's overdose death.......................... 10

   III.  The district court's sentencing decision held Mr. Robinson responsible for Bartosh's independent, culpable decisions................................. 11

      A.   Reed Bartosh bore independent criminal responsibility for Brianna Flood's overdose death.................................................. 12

      B.   Reed Bartosh made an independent decision to take his own life............... 13

   IV.  The district court abused its discretion by defining the "nature" and "seriousness" of Mr. Robinson's offense so broadly that they included Bartosh's suicide. ................................................................. 13

Conclusion............................................................................................... 14

Certificate of Service .............................................................................. 15

Certificate of Compliance ............................................................................ 15

# Table of Authorities

**Cases**

*Gall v. United States,*
   552 U.S. 38, 56 (2007) ...................................................... 8

*Holguin-Hernandez v. United States,*
   140 S. Ct. 762 (2020) ....................................................... 8

*Scheffer v. Washington City, V.M. & G.S.R. Co.,*
   105 U.S. 249 (1881) ...................................................... 7, 12

*United States v. Reyes-Contreras,*
   910 F.3d 169 (5th Cir. 2018) (en banc) ............................ 12

*Zanuccoli v. United States,*
   459 F. Supp. 2d 109 (D. Mass. 2006) ................................ 12

**Statutes**

18 U.S.C. § 3231 ................................................................... 1

18 U.S.C. § 3553(a) ....................................................... 1, 8, 9

18 U.S.C. § 3742 ................................................................... 1

21 U.S.C. § 841(b) .............................................................. 12

28 U.S.C. § 1291 ................................................................... 1

Mo. Rev. Stat. § 565.023.1(2) ............................................ 12

**Sentencing Guidelines**

U.S.S.G. § 5H1.4 ................................................................. 11

U.S.S.G. § 5K2.1 ................................................................... 2

**Other Authorities**

D. De Berardis et al., *Editorial: Understanding the Complex Phenomenon of suicide: From Research to Clinical Practice*, 9 Frontiers in Psychology 1 (Mar. 2018) ........................................................................................... 7

## Jurisdictional Statement

The district court had original jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

The district court entered its written judgment on September 26, 2019. (ROA.119). Mr. Robinson filed his notice of appeal the following day. (ROA.124).

**Issue Presented for Review**

Does 18 U.S.C. § 3553(a) call for a longer a sentence for drug-distribution where one of the defendant's customers—overcome with grief about his role in a loved one's fatal overdose—committed suicide months later?

## Statement of the Case

The Government charged Michael Dasean Robinson for his role in a drug-distribution conspiracy lasting from November 2017 to January 2019. (ROA.34). He pleaded guilty. (ROA.44–45; ROA.175–211). Based on the quantity of drugs involved and his criminal history, Mr. Robinson faced an advisory sentencing guidelines range of 151–188 months. (ROA.383). The district court imposed a much longer sentence: 340 months in prison, followed by 7 years of supervised release. (ROA.119).

The court gave several reasons for imposing such a long sentence, but the bulk of its factual findings related to its decision to hold Mr. Robinson responsible for two people's deaths: Brianna Flood, who died of a heroin overdose in November 2017, and Reed Bartosh, who committed suicide several months later. (ROA.300–309, ROA.312, ROA.322, ROA.324–325). The court imposed the sentence as a non-guidelines variance, but repeatedly expressed the conclusion that a sentence above the guideline range was authorized by U.S.S.G. § 5K2.1, because "[t]wo deaths did result from the defendant's conduct." (ROA.312).

Reed Bartosh and Brianna Flood began dating after they met at a substance abuse treatment facility. (ROA.160, ROA.271, ROA.548–549). They lived together for about nine months before she passed away. (ROA.583). Bartosh had a history of heroin addiction. (ROA.160). He told police that two coworkers put him in touch with

Mr. Robinson. (ROA.357). According to Bartosh's written statement to police, he and Flood met Mr. Robinson in the parking lot of an apartment complex on November 30, 2007, where he sold them $40 worth of heroin. (ROA.357). That night, both of them injected heroin. (ROA.357). Bartosh fell asleep or passed out. (ROA.357–358). He awoke the next day, but she did not. (ROA.357–358).

At sentencing, the district court found by a preponderance of the evidence—and, in the court's words, "beyond a reasonable doubt" (ROA.300–301)— that Brianna Flood died because of "the heroin in her system." (ROA.301). The parties presented competing expert testimony on that question.[1] According to the Government's witness, Dr. Susan Roe, Brianna Flood's cause of death was "sudden death with a history of recent heroin use." (ROA.292). According to the Defense's expert witness, Dr. Adel Shaker, the evidence did not allow a definitive diagnosis of heroin as the cause, because there were no heroin-specific metabolites in the laboratory samples—only morphine. (ROA.240, ROA.257). In Dr. Shaker's opinion, the cause of death was a previously undiagnosed heart condition. (ROA.266–267). He did not deny or rule out that either heroin or morphine was "the immediate cause of her demise," but concluded

---

[1] The Government called Dr. Susan Roe, a Deputy Medical Examiner for Tarrant County, Texas, who performed the autopsy. (ROA.284–295). The court obtained and admitted the autopsy report as its own exhibit. (ROA.534–545). The Defense retained Dr. Adel Shaker, the Medical Examiner for Nueces County, Texas (and surrounding counties), who reviewed Dr. Roe's report and the tissue samples. (ROA.228–276).

that the levels here were too low to make that diagnosis certain. (ROA.272). The district court resolved this evidence in favor of the Government and overruled Mr. Robinson's objection related to causation of Brianna Flood's death. (ROA.300–301).

But the court went further. It did not simply hold Mr. Robinson responsible for Brianna Flood's death. The court performed a detailed analysis of evidence it collected on its own to conclude that Mr. Robinson also caused Reed Bartosh's subsequent suicide. Given the importance of that conclusion to the sentence, the "evidence" (such as it is) is described in some detail here.

DEA Task Force Officer Steven Smith, the agent in charge of this investigation, averred that Bartosh "committed suicide using a firearm" on July 22, 2018. (ROA.9; ROA.139). When asked about Bartosh's possible motivation, Officer Smith testified that Bartosh did not leave a note but that there were some clues:

> [T]here were some messages that were sent between Mr. Bartosh and his father. His father was pretty upset in regards to some money issues. And obviously, his ~ his drug addiction had pushed him to do things that his father wasn't happy with. And I believe, based on some of those messages, that he probably killed himself because of that.
>
> * * * *
>
> As well as ~ and this is just my personal opinion through the investigation ~ one of the sources of information suggested that they had seen him several months before he committed suicide and that he was still pretty distraught over Brianna Flood's death, that

he had kind of a makeshift shrine in his hotel room with pictures of her and some flowers.

So I can't say if it was his father's messages to him and/ or the combination of what had occurred with his girlfriend, but ultimately, you know, something pushed him to suicide.

But no, there was no note. We asked about that.

(ROA.153).

Just before sentencing, the district court entered an order listing the documents it had reviewed, on its own, "relative to the relationshiop between the sale by defendant to Reed Bartosh of herin and the death of Brianna Flood and, ultimately, the death of Reed Bartosh." (ROA.75–76). Those documents were later made part of the Record as "Court Exhibits" 1, 2a, 2b, 2c, and 3–15. (ROA.301–302; ROA.533–639). The court went into great detail describing its basis for concluding "that the heroin that killed Brianna is what led to [Reed Bartosh's] death and his involvement in it." (ROA.301).

The court cited several pieces of evidence in support of that conclusion: the victim-impact statement prepared by Brianna Flood's mother, who reported the contents of a conversation she had with Bartosh after Flood died (ROA.302–303 discussing ROA.548–549); the victim-impact statement prepared by Reed Bartosh's mother (ROA.304 discussing ROA.551–552); the criminal complaint (ROA.305 discussing ROA.8–24); Reed Bartosh's handwritten statement to police after Brianna Flood's

death (ROA.305 discussing ROA.575–578); and various police and DEA reports of their investigation into Mr. Robinson and Reed Bartosh. (ROA.581–620).

After making detailed findings—recited over seven pages of the sentencing transcripts—ROA.301–312—about the suicide, the district court ultimately concluded that "[t]wo deaths resulted from" Mr. Robinson's "conduct." (ROA.312). In explaining its sentence of 340 months, the court again re-emphasized its findings that Bartosh's suicide was a harm caused by Mr. Robinson's distribution of heroin, as relevant to the "nature and circumstances of the offense" and "the seriousness of the offense." (ROA.322, ROA.324). The court then entered an alternative finding: even if it had not made a definitive finding that Reed Bartosh's suicide was caused by the heroin distribution, the court would impose the same sentence because her overdose death was "was at least a factor in" Bartosh's decision "to kill himself." (ROA.322).

This timely appeal follows. (ROA.124).

## Summary of the Argument

This Court should vacate the sentence and remand for re-sentencing. While the district court did not abuse its discretion in finding that the heroin Mr. Robinson sold to Bartosh caused Brianna Flood's overdose, that does not justify the court's decision to hold Mr. Robinson responsible for Bartosh's own suicide—and independent act of

free wheel, motivated in large part by Bartosh's guilt over his participation in Brianna Flood's overdose. The resulting sentence was substantively unreasonable.

## Argument

"[S]uicide is a complex (and yet not fully understood) phenomenon and may be determined by the interaction between various factors, such as neurobiology, personal and familiar history, stressful events, sociocultural environment, etc." D. De Berardis et al., *Editorial: Understanding the Complex Phenomenon of suicide: From Research to Clinical Practice*, 9 Frontiers in Psychology 1 (Mar. 2018). In recognition of that reality, the traditional rule in American law is that a victim's suicide is an independent, intervening cause. E.g. *Scheffer v. Washington City, V.M. & G.S.R. Co.*, 105 U.S. 249, 252 (1881) ("The proximate cause of the death of Scheffer was his own act of self-destruction. It was within the rule in both these cases a new cause, and a sufficient cause of death.").

To the extent that we can even *know* the reasons for Reed Bartosh's tragic suicide, the record suggests that there were numerous intervening factors both before and after Mr. Robinson sold the heroin on which Brianna Flood overdosed. The district court's decision to hold Mr. Robinson responsible for Bartosh's death resulted ina substantively unreasonable sentence.

This Court reviews criminal sentences for substantive reasonableness. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020). The question is whether the district judge "'abused his discretion in determining that the [18 U.S.C. § 3553(a) factors supported' the sentence imposed." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 56 (2007)). Under *Holguin-Hernandez*, a defendant who "advocate[es] for a particular sentence" has preserved his substantive reasonableness challenge for plenary review. *Id.* at 766–767.

**I.    In applying the § 3553(a) factors, the district court repeatedly referred to its decision that Mr. Robinson's distribution of heroin led to Reed Bartosh's suicide by firearm.**

The parties devoted significant attention at sentencing to the medical evidence regarding the cause of Brianna Flood's overdose death. But when expressing its findings relevant to sentencing (and the reasons for the sentence), the district court gave just as much attention to the subsequent death of Flood's boyfriend Reed Bartosh. Two days before the sentencing hearing, the court entered an order disclosing its tentative decision that the "18 U.S.C. § 3553(a)" sentencing factors required it to consider "the relationship between the sale by defendant to Reed Bartosh of heroin and the death of Brianna Flood *and, ultimately, the death of Reed Bartosh*." (ROA.75) (emphasis added).

After pronouncing the 340-month sentence (ROA.316), the court described the § 3553(a) factors it considered "pertinent" to the sentencing decision. (ROA.324). The court first recited details about Mr. Robinson's criminal history and drug-dealing activities. (ROA.316–322). But the court then returned to its earlier conclusions about the two deaths: ROA.322). In the district court's assessment, Bartosh's suicide was relevant to "[t]he nature and circumstances of the offense" as well as the "seriousness of the offense." (ROA.324). The court acknowledged that it might be wrong in its "definitive" belief that Brianna Flood's overdose was the but-for cause of Bartosh's suicide, but stated it would still impose the same sentence because "the death of Brianna Flood was at least a factor in" Bartosh's decision to kill himself.

## II.  Bartosh's suicide came months after Flood's overdose death.

Brianna Flood died of an overdose the evening of November 30 or the morning of December 1, 2017. (ROA.576–577). Reed Bartosh "committed suicide using a firearm" in July 2018. (ROA.305). There is no doubt that he was devastated by the loss. He was also overcome by grief over his own role in her death—he is the one who convinced her to try heroin for the first time, and he later admitted to her mom and others that he actually injected the drug into her. (ROA.548).

In those seven months after she passed away, Bartosh "stopped working." (ROA.620). He "checked himself into  an inpatient [rehabilitation] facility" shortly

after her death. (ROA.305). But soon he was using drugs again. About a month later—so December 2017 or January 2018—he was living "at a Travelodge hotel." (ROA.306). By early February, he was pawning items to pay for drugs with a stranger he had just met in Wal-Mart the day before. (ROA.600–601). Fort Worth police arrested him with drugs on February 1. (ROA.601–602; ROA.306). A few days later, Bartosh's father made complaints that some items were stolen from the house, and Bartosh accused his new acquaintance of stealing them. (ROA.602).

Investigators also mentioned additional text messages indicating other reasons that might have been the immediate cause of Bartosh's suicide: "His father was pretty upset in regards to some money issues. And obviously, his ~ his drug addiction had pushed him to do things that his father wasn't happy with. And I believe, based on some of those messages, that he probably killed himself because of that." (ROA.153).

## III. The district court's sentencing decision held Mr. Robinson responsible for Bartosh's independent, culpable decisions.

Like suicide, addiction is a complex and powerful source of harm in our society. Addiction is often cited by defendants as a *mitigating* factor when considering drug-fueled crimes and the resultant harms, addiction alone does not absolve people of moral or criminal responsibility—not for the drug use itself, nor for harmful actions taken under the influence. When the Guidelines were binding, courts were prohibited

from departing downward to account for drug addiction as a mitigating factor. U.S.S.G. § 5H1.4.

## A. Reed Bartosh bore independent criminal responsibility for Brianna Flood's overdose death.

The sentencing evidence in this case demonstrates that Reed Bartosh was addicted to heroin. He met Brianna Flood at a rehab facility where he was seeking treatment for this addiction. (ROA.160). After completing the program, he started working at a restaurant and immediately—on the very first day of training—started asking his new co-workers to put him in touch with a supplier. (ROA.612–614). That is how he eventually made contact with Mr. Robinson. (ROA.612–614).

That said, he admitted to several people that he is the one who talked Brianna into trying heroin that night. He not only prepared the drug for injection, but he personally injected it into her arm. And when she tried to warn him of a negative reaction—"her hearing was off," (ROA.576)—he "didn't think much of it." (ROA.576). He passed out or fell asleep. (ROA.576). He was not awake or aware enough to call for help. (ROA.576–577). He later told her mom that she "couldn't see." (ROA.548). "He knew something was wrong," but could not help her because he, too, was under the influence of the drug. (ROA.548).

He did not awake until the next morning, when it was too late. (ROA.576–577).

**B. Reed Bartosh made an independent decision to take his own life.**

Even if Bartosh had no independent responsibility for the Brianna Flood's tragic overdose, his decision to take his own life was his own decision. That is why American law has traditionally treated suicide as a "new" or intervening "cause." *Scheffer*, 105 U.S. at 252.

That is not to say that criminal law *never* holds someone responsible for another person's suicide. Many states prohibit *assisting* someone with the act of suicide.[2] And at least one court has held that the statutory enhancement under 21 U.S.C. § 841(b)— where "death or serious bodily injury results" from drug distribution—would apply where the victim purposefully overdoses on controlled substances. *See Zanuccoli v. United States*, 459 F. Supp. 2d 109, 112 (D. Mass. 2006).

**IV. The district court abused its discretion by defining the "nature" and "seriousness" of Mr. Robinson's offense so broadly that they included Bartosh's suicide.**

The district court's decision here simply extends the scope of liability too far. Mr. Robinson did not supply drugs that Bartosh used to commit suicide. Bartosh did not use drugs, he used a firearm. Mr. Robinson did sell drugs to Bartosh on multiple

---

[2] *See, e.g., United States v. Reyes-Contreras*, 910 F.3d 169, 186 n.36 (5th Cir. 2018) (en banc) (discussing Mo. Rev. Stat. § 565.023.1(2)).

United States v. Reyes-Contreras, 910 F.3d 169, 186 (5th Cir. 2018)

occasions, and the district court found that some of the heroin he sold Bartosh caused the death of Brianna Flood. But Bartosh was not merely overcome with *grief* over her death; he also felt a sense of *guilt*. (ROA.306). Mr. Robinson can be held responsible for the physical effects of the drugs he distributed. But he should not be held responsible for the actions a buyer took in remorse.

## Conclusion

The district court abused its discretion, and rendered a substantively unreasonable sentence, when it held Mr. Robinson responsible for Reed Bartosh's suicide. This Court should vacate the sentence and remand.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender for the
Northern District of Texas

/s/ J. Matthew Wright
Assistant Federal Public Defender
Texas Bar No. 24058188
500 South Taylor Street, Suite 110
Amarillo, Texas 79101
Telephone: (806) 324-2370
Matthew_Wright@fd.org

*Attorneys for Mr. Robinson*

## Certificate of Service

I filed this brief via the Court's ECF system on June 5, 2020.

/s/ J. Matthew Wright

## Certificate of Compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the document contains 2,732 words, exclusive of exempted portions.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Goudy Old Style font, with footnotes in 12-point.

/s/ J. Matthew Wright